UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CHRISTOPHER MACCHIA,

Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**MEMORANDUM & ORDER**
25-CV-05084 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Christopher Macchia seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of the Social Security Administration's (the "SSA" or "Commissioner") final decision denying his claim for disability insurance benefits. ECF No. 1 (Complaint).[1] Before the Court are the parties' cross-motions for judgment on the pleadings. ECF No. 8 (Plaintiff's Motion); ECF No. 10 (Defendant's Opposition and Cross-Motion). For the reasons set forth below, the Court GRANTS the Commissioner's motion and DENIES Plaintiff's motion.

## BACKGROUND

Plaintiff was born on March 2, 1967, earned his GED in 1985, and worked at Con Edison as an office clerk for about thirty-four years before retiring with full pension benefits on March 29, 2024, because he "physically couldn't do the job" anymore. *See* ECF No. 6 at 29, 33, 54, 75, 255 (Administrative Record; "AR"). Less than two weeks later, Plaintiff filed an application for disability benefits for a period beginning on the date of his retirement, alleging the following

[1] Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

impairments: "bilateral hip injuries, bilateral shoulder injuries, bilateral hand injuries, spinal disease, diagnosed with leukemia in 2017, high blood pressure." *Id.* at 75, 204. The SSA denied the application initially on June 4, 2024, *see id.* at 94–102, and upon reconsideration on July 25, 2024, *see id.* at 105–11. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), *see id.* at 112–13, which occurred on February 27, 2025, *see id.* at 45.

ALJ David Suna issued a decision on March 3, 2025, concluding that Plaintiff was not disabled, and affirming the denial of his disability benefits. AR at 40. In making this decision, the ALJ applied the required five step analysis, to determine:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether, based on an assessment of the claimant's residual functional capacity ["RFC"], the claimant can perform any of her past relevant work; and (5) whether the claimant can make an adjustment to other work given the claimant's [RFC], age, education, and work experience.

*Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022) (citing 20 C.F.R. § 404.1520(a)(4)(i)–(v)).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since retiring. AR at 29.

At step two, the ALJ evaluated Plaintiff's Adult Disability report and medical records from pain management providers whom Plaintiff had seen for his ailments: Jeffrey Hamelin, P.A., Michelle Maiolo, N.P., Raviinder Singh Parmar, M.D., and Courtney Simmons, M.D. (the "Pain Management Providers"), as well as pulmonologist Eric Klug, P.A., and found that Plaintiff had severe impairments of "bilateral shoulder impairment, status-post right reverse shoulder arthroplasty (October 2023); right hip impairment; chronic pain syndrome; opioid

use."[2] *Id.* at 29–31. The ALJ also considered Plaintiff's other alleged impairments—hand issues, left hip, spinal disease, leukemia, and high blood pressure. With respect to leukemia and high blood pressure, the ALJ found that they were nonsevere because there was "no objective evidence that the conditions caused more than minimal functional limitations in [Plaintiff]'s ability to perform basic work-related activities." *See id.* at 29–30. And with respect to spinal disease, hand issues, and left hip the ALJ found that there was "no objective evidence to support a finding that [Plaintiff] has a medically determinable impairment." *See id.* at 31.

At step three, the ALJ considered Plaintiff's impairments and found they did not meet or equal the severity of one of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

At step four, the ALJ concluded that Plaintiff had a "residual functional capacity to perform light work," subject to certain exceptions and limitations, and that Plaintiff could perform past relevant work. *See* AR at 32–38. In making this finding, the ALJ evaluated Plaintiff's Adult Disability, Appeals Disability, and Adult Function reports, records from the Pain Management Providers and orthopedic surgeon Mark Frankle, M.D., as well as record and hearing testimony. *See id.* at 32–37; 45–73; 261–68; 274–80; 283–89. The ALJ further considered a functional assessment by SSA consultant Dr. Samuel, who found that Plaintiff could "frequently" or "occasionally" engage in activities consistent with light work. *See id.* at 37. The ALJ found Dr. Samuel's opinion "partially persuasive" but concluded that the "overall evidence supports additional limitations." *See id.* The ALJ also heard testimony from a

[2] The ALJ did not perform the standard two-step drug and alcohol abuse ("DAA") analysis concerning Plaintiff's opioid use. *See* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535. This omission was not error, however, because the ALJ found that Plaintiff was "not disabled," AR at 39, and DAA regulations "only contemplate an analysis concerning the materiality of drug and/or alcohol abuse after a claimant is found disabled at step five," *Anderson v. Berryhill*, No. 14-cv-6937, 2017 WL 1154993, at *11 (E.D.N.Y. Mar. 27, 2017).

vocational expert who testified that a hypothetical person with Plaintiff's same RFC could perform Plaintiff's past job, even with several limitations. *See id.* at 38. The ALJ found that the impairments identified in step three could reasonably be expected to cause Plaintiff's symptoms, but that the intensity, persistence, and limiting effects of those symptoms were not consistent with the record. *See id.* at 33.

And at step five, the ALJ concluded that "there are other jobs that exist in significant numbers in the national economy" that Plaintiff could perform considering his age, education, work experience, transferable skills, and RFC. *See* AR at 38–39. In reaching this decision, the ALJ relied on testimony from the vocational expert, which was accepted in accordance with Social Security Ruling ("SSR") 24-3p. *See id.* at 39.

Based on the evidence and testimony, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant period and denied his appeal. *See id.* at 39–40. Plaintiff subsequently requested review by the Appeals Council and was denied. *Id.* at 5. Plaintiff now appeals that decision to this Court. *See* ECF No. 1.

## LEGAL STANDARD

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). In evaluating a determination by the Commissioner, the Court must "conduct a plenary review of the administrative record" and "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022). "The substantial evidence standard is a very deferential standard of review—even more so than the clearly erroneous standard." *Schillo*, 31 F.4th at 74. But the standard is

"not merely hortatory: It requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022). Although an ALJ is not required to "reconcile[]" "every conflict in [the] record," the ALJ must describe "the crucial factors in any determination . . . with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). The Court is therefore "required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Schillo*, 31 F.4th at 74. Once an ALJ has made findings of fact, however, the Court "can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Id.* (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)). Put another way, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.*

## DISCUSSION

Plaintiff argues that the "Commissioner's decision is not supported by substantial evidence, nor does it properly apply the relevant legal standards." ECF No. 8-1 at 8 (Plaintiff's Memorandum). Specifically, Plaintiff contends that there is not substantial evidence to support the ALJ's RFC findings, that the ALJ failed to develop the record, and that the ALJ improperly relied on Dr. Samuel's opinion. *See id.* at 10–13. For the reasons set forth below, the Court holds that the ALJ did not err in his findings or process.

### I. The ALJ Fulfilled his Duty to Develop the Record

Before deciding whether the ALJ's decision is supported by substantial evidence, "the Court must first determine whether the ALJ fulfilled his duty to fully develop the record." *See Shand v. Kijakazi*, No. 22-cv-7479, 2023 WL 5162994, at *10 (S.D.N.Y. Aug. 11, 2023). Plaintiff argues that the ALJ did not properly develop the record because he failed to contact a

medical expert, contact a treating physician for a functional assessment, order a consultative medical examination, or summon a physician to testify. ECF No. 8-1 at 12. In fact, the ALJ considered, and denied, Plaintiff's request for a post-hearing consultative examination and/or review of the record from an impartial medical expert" because:

> None of [20 C.F.R. § 404.1519a(b)]'s conditions, or any other significant considerations, apply that would warrant a post-hearing consultative examination. The claimant, through his representative, has submitted treatment records going through January 2025, which is only one month shy of the hearing date. Moreover, although the State agency medical consultants reviewed the records on May 31, 2024, and July 17, 2024, respectively, the records submitted after these medical consultants reviewed them, as explained in further detail below, show no significant changes in the claimant's condition including in subjective complaints, objective medical findings on the clinical examinations, and recommended treatment regimen.

AR at 26–27. Moreover, "an ALJ is not required to further develop the record where the evidence present is sufficient for the ALJ to make a determination." *See Manzoor v. Comm'r of Soc. Sec.*, No. 20-cv-5559, 2024 WL 1241988, at *6 (E.D.N.Y. Mar. 22, 2024) (collecting cases); *see also Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (ALJ satisfies his duty to develop the record "[w]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history" of plaintiff).

Plaintiff does not identify any "obvious gaps in the administrative record" that these missing authorities would fill. Instead, the record reflects a complete medical history sufficient to support the ALJ's decision. Where, as here, a record "consist[s] of medical opinions, treatment notes, and test results . . . as well as [Plaintiff]'s own testimony," it is complete and an ALJ does not err in failing to supplement it. *Schillo*, 31 F.4th at 76. Plaintiff's medical records from the Pain Management Providers and Dr. Frankle, as well as the opinion from Dr. Samuel, thus constituted sufficient evidence for the ALJ to make his determination. *See id.*; AR at 30–31, 34–36, 312–683. As discussed below, there was substantial evidence to support the ALJ's

decision, *see infra* Part II, and because "the ALJ is under no obligation to further develop the administrative record when there are no obvious gaps within the record, and where the ALJ already possesses a complete medical history," the ALJ here fulfilled his duty to develop the record, *see Alves v. Colvin*, No. 13-cv-3898, 2014 WL 4827886, at *12 (S.D.N.Y. Sept. 29, 2014).

## II. The ALJ's Findings are Supported by Substantial Evidence

Plaintiff argues that "the record is devoid of substantial evidence supportive of the ALJ's findings with respect to [P]laintiff's functional capacities." ECF No. 8-1 at 10. Specifically, Plaintiff contends that the ALJ's RFC determination amounted to "little more than guesswork and speculation," that the "totality of the evidence is such that there is ample reason to doubt the [P]laintiff's ability [to work]," and that the ALJ improperly "predicate[d] his specific functional findings on the assessment of State Agency consultant Dr. Samuel." *Id.* at 12–13. The record does not support Plaintiff's arguments.

The ALJ began his RFC determination by evaluating the medical records and notes from the Pain Management Providers and Dr. Frankle. *See* AR at 34–36. This included specific visits, tests and operations performed, as well as examination results and improvements. *See, e.g.*, *id.* at 35–36 (discussing a series of visits with Ms. Maiolo, during which Plaintiff indicated his right shoulder was "80% improved" and he had "60% pain relief in the right hip," and the examinations showed "full cervical [range of motion ("ROM")], negative [straight leg raise test ("SLR")], full motor strength throughout the upper extremities, normal gait, and no neurologic deficits in the lower extremities"). The ALJ also addressed the remainder of Plaintiff's purported ailments, again grounding his conclusion in a review of the Pain Management Providers' medical records, and finding that:

> These examinations consistently included findings of full active cervical [ROM] without tenderness, full motor strength including in the elbows, wrists, and fingers, sensation, and reflexes throughout the upper extremities. As for the lumbar spine, these examinations consistently showed normal gait, ability to toe walk and heel walk "with good strength," negative SLR, normal curvatures of the spine, and full motor strength throughout the lower extremities, with unremarkable reflexes, sensation, bulk, and tone. Accordingly, there is no objective evidence to support a finding that the claimant has a medically determinable impairment regarding the hands, cervical spine, lumbar spine, or left hip.

*Id.* at 30. The ALJ then considered the opinion of the SSA medical consultant, Dr. Samuel, which he found to be "partially reliable." *See id.* at 37. ALJ Suna further evaluated Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms," and found them "inconsistent because the overall evidence of the record does not support the full extent of his alleged functional limitations." *See id.* at 34–36. The ALJ reasoned that:

> Although [Plaintiff] continued to complain of pain in the right shoulder, it is notable that the subsequent visits showed improvement in his ROM, no notations of pain to palpation or pain with ROM testing and continued unremarkable neurologic functioning throughout the right upper extremity. In fact, the subsequent treatment records with his pain management providers contain [Plaintiff's] reports of "80%" improvement in the right shoulder since the surgery in October 2023.

*Id.* at 37. From all this evidence, the ALJ rendered his decision that Plaintiff was capable of performing light work, specifically noting the treatments and improvements in both pain and range of motion that Plaintiff received for his left shoulder, right shoulder, and hips, thereby "build[ing] an accurate and logical bridge from the evidence to [his] conclusion." *See Gladys G. v. Comm'r of Soc. Sec.*, No. 22-cv-03554, 2023 WL 5020343, at *4 (S.D.N.Y. May 22, 2023); AR at 36–37.

Finally, Plaintiff objects to what he characterizes as an RFC determination "based solely on the opinions of a non-examining consultant," Dr. Samuel. ECF No. 8-1 at 13. Indeed "it is improper for an ALJ to place significant weight on the findings of a non-examining source when those findings differ from other medical evidence of record." *See Avila v. Comm'r of Soc. Sec.*

*Admin.*, No. 20-cv-1360, 2021 WL 3774317, at *20 (S.D.N.Y. Aug. 9, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 3774188 (S.D.N.Y. Aug. 25, 2021). But here, the ALJ does not base his RFC determination solely on Dr. Samuel's opinion. Rather, the ALJ explicitly notes that though Dr. Samuel's opinion was "generally consistent with the overall evidence of record," it was only "partially persuasive." *See* AR at 37. The ALJ's decision makes this clear, diverging from Dr. Samuel's opinion and noting that "the overall evidence supports additional limitations." *See id.* Specifically, the ALJ found, in relevant part, that Plaintiff could push/pull occasionally with no overhead reaching; could not climb ladders, ropes, or scaffolds whatsoever; and could engage in occasional stooping, *see id.* at 31–32, while Dr. Samuel found that Plaintiff could engage in unlimited push/pull, other than lift and/or carry; could occasionally climb ladders, ropes, or scaffolds; and could engage in frequent stooping, *see id.* at 83. Moreover, as discussed above, the ALJ relied on medical records from Plaintiff's visits with the Pain Management Providers, not solely on Dr. Samuel's opinion. *See id.* at 30–31, 34–36. Plaintiff's argument that the ALJ improperly relied solely on the opinion of Dr. Samuel in making his decision is therefore without merit.

### III. The ALJ Applied the Proper Legal Standards

Plaintiff lastly argues that the ALJ did not apply the relevant legal standards. *See* ECF No. 8-1 at 8. Plaintiff does not identify which legal standards the ALJ purportedly misapplied, and such a conclusory assertion, without more, is insufficient to warrant remand. *See Pezza v. Comm'r of Soc. Sec.*, No. 19-cv-3254, 2020 WL 3503170, at *5 (E.D.N.Y. June 29, 2020) ("It is well-settled that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 76 (2d Cir. 2001)). Nevertheless, for the avoidance of doubt, the Court has reviewed the ALJ's five-step analysis in its entirety for legal error and has found none.

## CONCLUSION

For the above reasons, the Court DENIES Plaintiff's motion for judgment on the pleadings and GRANTS the Commissioner's cross-motion for judgment on the pleadings. The Clerk of Court is respectfully directed to enter judgment consistent with this decision and to close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
September 3, 2026